Last case of the morning is Weber Estates Investments v. Chicago Title. Mr. Ullman. Good morning. May I please support? Judge, good to see you again. Counsel. As I was preparing, I reread the briefs and I decided really that there's not a whole lot more that I can say more clearly than I've already written. But I just want to emphasize that I believe that this case is a matter of contract interpretation. And what the trial court did and what Chicago Title is doing is saying the language in the policy doesn't mean what it says. It means something entirely different. If you read the language of this policy, it fits well within the arguments that I've made. And I think that, therefore, the trial court not only made the wrong decision that the loss that was paid by the trails of Sunset Lake, but nevertheless devalued Weber Estates' property while Weber Estates had it, is the proper measure of damages. That's the entire argument with regard to whether or not she properly excluded our experts' opinion as well. So unless there are any other questions. Well, I wanted to just ask you about this language from the reply brief. This is at the end of Section 2. You say, any full value purchaser intending to take over the development of the subdivision would have demanded a price reduction equal to the cost of moving the gas main, which was necessary to allow the intended development of the property. Accordingly, the devaluation of $574,000 is the loss or damage plaintiff sustained or incurred. And so you're saying that the court really would have to, must take, in essence, judicial notice of the cost of the moving of the gas main being the amount of supply any expert testimony or evidence that that is, in fact, the diminution in value to the property? Because what I'm going to ask you about, who's to say that another developer would have thought it necessary to move the gas main? Is there only one way this property could be developed? And is development the use of the property that would create the highest value? Wouldn't you have to have evidence of that? Well, I do have evidence of that. And that is the expert's opinion of $574,000, which is the out-of-pocket plus a 20% contingency fee for moving, the oversight of moving the gas main. So there is evidence of that. And that's cited at least five times in my brief. That's the figure and that's how, that's where it came from, was our expert. And that's his testimony that, in fact, a developer seeking to purchase this property and would necessarily have to discount the purchase price by that amount. Now, Weber Estates purchased this property with that intent. They purchased the title insurance to protect them, to allow them to have that unencumbered use as that policy said it was unencumbered, which it did not include that which then included that gas main. So by the time that easement and gas main was located, they were well into the development of, you know, all the due diligence they did, all the planning they did. Had they been able to reconfigure or known that they needed to reconfigure the design, that might have been a possibility. But again, then they got no insight. From the get-go, they informed Chicago Title, the gas main needs to be moved. And there was no response at all from Chicago Title about, hey, that won't work, or let's look and see what's going on here. So, yes, I think there is evidence of it. And I think that when you look at the reason it was purchased, the reason they purchased title insurance, and the reason they transferred the title, all of that stuff plays out and gives them the right to make that claim. And the evidence is that our expert, that's where he comes up with that, that price, that figure, $574,000. Does that answer your  Yes. Okay. I'll sit down then. Mr. Sorensen. Thank you. I'm Jeff Sorensen. I am the attorney for the defendant Chicago Title Insurance Company in this matter. This is a case involving the proper measure of damages. There are issues raised by Mr. Umland in his briefs concerning construing the title insurance policy in a way that maximizes coverage. But there's no dispute here that the policy applies, that there was a covered loss. The issue is what is the appropriate measure of damages in this case. And the trial court correctly determined under the evidence that was presented to it that $4,200 was the amount of diminution. And I apologize, the good thing about this case being over is I will not have to pronounce diminution any longer because it's one of those words that I cannot pronounce correctly. So, but the trial court correctly decided that First of all, Mr. Umland asserts that there is evidence in the record for this court to determine that the damages are in fact $574,000 and that the testimony of Mr. Finch is in the record and the issue has been preserved on appeal. The first point we've made in our brief is that Weber Estates did not properly preserve and appeal the issue of the exclusion of their expert's testimony, Brian Finch. That testimony was excluded in preparation for oral argument. I took his electronic copy, I did a word search, and Finch is not in the body of the appellant's brief. There's simply a reference to the fact that there was an appraiser, unnamed, who gave an opinion of $574,000 in damages to Weber Estates in this matter. That's in footnote 4, I believe, on page 9 of the opening brief. But they never argued that that testimony was improperly excluded. So that evident issue has not been preserved for appeal. And without preserving that issue for appeal, as Judge Foley noted in her judgment, Weber Estates failed to disclose any expert opinion or testimony on the issue of damages other than that proffered by Finch. So we, Chicago Title, had our own expert, James Klopfenstein, who had opined that the difference in value of the estate as insured and subject to this undisclosed easement was $4,200. That's what the trial court awarded. The trial court really had no choice other than to do that because there was no other evidence of damages. The assumption that they make that, as Justice Harris pointed out, that's in the reply brief, that some third-party purchaser would have necessarily required a reduction in price to move the gas main makes a lot of assumptions. And, of course, that issue was not preserved because it wasn't raised in their opening brief. But it's speculative. It asked the court to take judicial notice at this level, where it did not ask the court to take judicial notice of it at the trial court level. The expenses in this case that are being argued by Weber Estates are expenses that were incurred by a non-insurer. They were incurred by the trails, which was a plaintiff. Summary judgment was granted in favor of Chicago Title Insurance Company against the trails' claims, or on the trails' claims, and the trails has an appeal. So the issue is what is the difference in the value of the estate as insured for Weber Estates and what is the value of the estate subject to that easement? The only evidence in the record is that the difference is $4,200. So the trial court properly entered judgment in Weber Estates' favor in that matter, or in that amount, rather, and this court should affirm that. So we would ask for those reasons that the court affirm the trial court judgment of $4,200, affirm the trial court's denial of the motion for leave to amend, which was filed on the eve of trial and introduced new issues. And just to, this is fully addressed in our brief, and Mr. Umland didn't argue this point on oral argument in his opening remarks, but I do want to point out that after he sought summary determination for his client on the proper measure of damages, and the court ruled in, essentially in favor of Chicago title, that is when he filed the motion for leave to amend. That was in 2013. This was a case that was filed in 2009. There were ample opportunities for the court to do that, but the court did not have the capacity to do that. There were no opportunities to raise the issue previously. There was no misrepresentation by Chicago title of its position in the case. It had always been the position of Chicago title, excuse me, that the amount of damages that would be recoverable by the plaintiff in this case would be subject to paragraph 7 of the terms and conditions. So the trial court properly exercised its discretion, and certainly did not abuse its discretion, in denying the 11th hour motion for leave to amend. Unless the court has questions for you, for me, that concludes my remarks. Thank you. Very briefly, the statement of facts explains why the judge barred Finch's testimony, which is it's not the proper measure of damages. The entire first section of the appellate's brief argues why it is the proper measure of damages. So nothing's been waived in regard to that opinion. Even if it isn't, the out-of-pocket expense paid by the trails is clearly the amount that would have devalued the property when Weber owned it, and when Weber informed Chicago title that that gas main needed to be moved. An example of that is provided in my brief, an analogy. Another analogy might be an experience that I had a few years ago where a tree fell on my house, knocked off a seamless gutter, and scratched or tore a sliding glass door screen. The insurance company came out immediately, adjusted the claim, and determined what it was going to cost for me to replace that. It indemnified me with a full amount. I had not replaced the screen, so I've now got a house that's devalued by that amount. I didn't replace the entire seamless gutters, I pieced it in. So I pocketed money from the insurance company, but they paid me full value for my loss. Now, if I will my house to someone after my death, they're going to get a house that's worth less because it's got a torn screen door and it has a pieced in gutter. That's the same thing I'm saying here with Weber Estates having a loss before they transferred it. It doesn't matter that the trails paid to move the gas main. They were getting a piece of property that required that for all intents and purposes, and that is what Weber Estates ensured was free, unencumbered use of that property. There's no doubt, there's no argument that if Weber Estates would have paid to move the easement and been advised to do so before it transferred title, they could have used up to $2.8 million of the policy to get that done. Same accomplishment. Well, that being said, why didn't they do that? Well, it's the same thing that's created the whole fiasco with one wholly owned entity shifting title for tax purposes, inheritance purposes, and all those sorts of things. So had they been advised to, which was part of the claim that it was vexatious delay and no advice was given, if you look at... I'm taken with the... that insurance companies would advise their claimants. Well, adjust the claim. Come out and say here's what it costs to replace the gutter. This is what we'll do for you. I think that's part of what they're supposed to do in adjusting a claim. If my homeowner's insurance company would have not come out after a tree fell and knocked it up, what am I supposed to do other than to fix it myself and hope I get it later? And that's what happened here. Finally, the estoppel issue is to me as egregious as anything. If in fact Weber Estates can't claim that loss because the easement hasn't been removed, then there's no fairness at all in the world. There's no way that this was raised until Weber Estates filed its motion. And they filed a counterargument, Chicago County filed a counterargument, to which I immediately said they should be estopped from making that argument. After years of this claim laying around, they never said that was an issue. So before I tried to amend with a pleading, I raised it in an argument saying they should not be allowed to make that argument. So the lateness of the argument is them raising it late, not Weber Estates. Thank you. Thank you. We'll take this matter under advisement and we stand in recess until 1 o'clock.